IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JASON WAYNE COURTNEY,

    Plaintiff,

v.

(1) STATE OF OKLAHOMA, ex rel., DEPARTMENT OF PUBLIC SAFETY, and

(2) JACOB SMITH, Oklahoma Highway Patrol Trooper, in his individual capacity,

    Defendants.

Case No. CIV-11-280-RAW

## ORDER

Before the court are the motions for summary judgment by the State of Oklahoma, ex rel., Department of Public Safety (hereinafter "the State") [Docket No. 31] and by Oklahoma Highway Patrol Trooper Jacob Smith (hereinafter " Trooper Smith") [Docket No. 34][1]. Plaintiff filed his Petition in the District Court in and for Muskogee County on July 5, 2011. He brought the following claims against Trooper Smith: (1) unconstitutional deprivation of liberty or seizure of person, and (2) unconstitutional deprivation or seizure of property. He also brought the following claims against the State: (1) false arrest and imprisonment, (2) assault and battery, and (3) conversion. Defendants removed the action to this court on August 16, 2011. For the reasons delineated below, both motions for summary judgment are granted.

---

[1]Trooper Smith's first motion for summary judgment [Docket No. 30] is rendered moot by his amended motion.

**UNDISPUTED MATERIAL FACTS[2]**

On October 25, 2010 at approximately 1:30 a.m., on the Muskogee Turnpike, Trooper Smith observed a vehicle traveling at 82 miles per hour via his radar equipment. The applicable speed limit was 75 miles per hour. Additionally, the person operating the vehicle, Plaintiff Jason Courtney, did not dim the vehicle's bright lights as Trooper Smith passed. Consequently, Trooper Smith attempted to initiate a traffic stop on the Chandler Road exit of the Muskogee Turnpike. Plaintiff did not stop immediately. Instead, he continued through the stop light and pulled into an open and well-lighted gas station. Trooper Smith briefly sounded his siren before Plaintiff came to a complete stop.

After Plaintiff stopped the vehicle, Trooper Smith approached and instructed him to exit the vehicle. Trooper Smith requested Plaintiff's license and instructed him to have a seat in the patrol car. Trooper Smith then advised Plaintiff of the reason he was stopped and told him that he would be issued a warning. While he was writing the warning, Trooper Smith asked Plaintiff questions. Plaintiff told Trooper Smith that he was driving to his job as a union bricklayer in Tulsa. He said that he lived in Tennessee and had looked all over the country for work, but Tulsa was the only place he found work. Plaintiff was on his way back to Tulsa after a weekend with his family. He told Trooper Smith that he returned to Tennessee about every three weeks to visit his family.

Trooper Smith believed that Plaintiff's stated travel plans were unusual. Additionally, while he was preparing the warning paperwork, Trooper Smith noticed what he believed to be

---

[2]The facts in this case are not in dispute. In fact, the parties agree that the audio and video recording of the traffic stop and arrest of Plaintiff is a true and correct depiction of the events that transpired.

signs of extreme nervousness, including Plaintiff's heart beating through his shirt, his carotid artery visibly pulsing, heavy breathing, continuous yawning, nervous laughter, and shaky, sweaty hands. Because of these things and because Plaintiff had not pulled over immediately, Trooper Smith was suspicious that Plaintiff was engaged in criminal activity. Nevertheless, he returned Plaintiff's license and paperwork to him and told him to have a nice day. Trooper Smith allowed Plaintiff to exit the patrol car and walk back to his vehicle.

Trooper Smith then asked Plaintiff if he would mind answering a few more questions. Plaintiff declined. At that point, Trooper Smith frisked Plaintiff and instructed him to sit back down in the patrol car. Trooper Smith told Plaintiff that he had noticed several indicators that caused him to become suspicious of criminal activity. Trooper Smith asked Plaintiff if he had any illegal drugs, large amounts of cash or firearms in the vehicle. Plaintiff said that he had a gun in the trunk. Trooper Smith then called for a canine to sniff the perimeter of Plaintiff's vehicle. Trooper Smith also called his dispatcher and asked for a criminal history on Plaintiff. The canine did not indicate that there were drugs in the vehicle.

The dispatcher then informed Trooper Smith that Plaintiff had an adjudication for felony breaking and entering from the State of Michigan in May of 1998. Trooper Smith showed the screen to Plaintiff, but Plaintiff did not recall any such adjudication and said that he did not have a felony on his record. Trooper Smith took steps to ensure that the record he was viewing was, in fact, Plaintiff's record. Trooper Smith was aware that Plaintiff would have been under eighteen years of age when the felony occurred and that the felony occurred more than twelve years prior. Because of these facts, Trooper Smith voiced his concern to other officers about whether he should arrest Plaintiff, but ultimately he decided to make the arrest. Trooper Smith then arrested

Plaintiff for possession of a firearm after former conviction of a felony in violation of 21 OKLA. STAT. § 1283(A).³ Plaintiff's vehicle and gun were seized pursuant to the arrest.

Plaintiff was held for 36 hours in the "detox" cell at the Muskogee County Jail. Plaintiff claims that during the course of his arrest and while in the Muskogee County Jail, Trooper Smith and others at the jail subjected Plaintiff to "contact with his person . . . without [his] consent . . . which he found offensive." On October 26, 2011, Plaintiff's attorney contacted the Muskogee County District Attorney's office and informed them that Plaintiff did not have a felony conviction on his record. The Muskogee County District Attorney's office then ordered that Plaintiff be released. No charges were filed against Plaintiff.

After his release and payment of the impound fees, Plaintiff was allowed to retrieve his vehicle. Plaintiff was not able, however, to retrieve his gun immediately. At the time of Plaintiff's release from jail, Trooper Smith had not yet turned in the gun. Trooper Smith delivered the gun to the Muskogee County Sheriff's office on November 9, 2010. On November 12, 2010, the State received a Governmental Tort Claim Act Notice, stating in part that Plaintiff's gun had not been returned to him. The gun was returned to Plaintiff on October 13, 2011, almost one year after its original confiscation.

Plaintiff does not complain that his rights were violated by the initial traffic stop or by Trooper Smith's activities until the time he gave Plaintiff the warning and allowed him to walk back to his car. Instead, Plaintiff complains that his rights were violated when Trooper Smith extended the stop beyond the time necessary to write the warning and arrested him.

---

³Section 1283(D) addresses juvenile felony offenders. In the case of a juvenile felony offender, he or she may not possess a firearm for ten years after the adjudication.

## SUMMARY JUDGMENT & QUALIFIED IMMUNITY

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of his complaint. Id.

When a defendant asserts qualified immunity in response to a summary judgment motion, the question is decided differently. Vondrak v. City of Las Cruces, 535 F.3d 1198, 1204 (10th Cir. 2008). "When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff, who must first establish that the defendant violated a constitutional right." Id. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). In such a case, summary judgment would be granted.

If, on the other hand, a plaintiff shows that a constitutional violation occurred, "the plaintiff must then show that the constitutional right was clearly established." Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 1204-05. If the law did not put a reasonable officer on notice, then summary judgment should be granted. Id.

Courts are permitted to exercise "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). Only if a plaintiff first meets this two-part test, does the defendant bear the traditional summary judgment burden to show that there are no genuine disputes of material fact and that he or she is entitled to summary judgment as a matter of law. Kock v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011).

**TROOPER SMITH'S MOTION**

Plaintiff claims that Trooper Smith violated his Fourth Amendment rights when Trooper Smith detained and arrested him. Specifically, Plaintiff claims that Trooper Smith did not have reasonable suspicion to detain him further after issuing the traffic warning, advising him that he was free to leave and allowing him to return to his vehicle and that Trooper Smith did not have probable cause to arrest him. Additionally, Plaintiff claims that because the arrest was unlawful, Trooper Smith deprived him of his gun and vehicle in violation of the Fourth and Fifth Amendments.

Trooper Smith asserts that he is entitled to qualified immunity. The court must first determine, therefore, whether Plaintiff has established that Trooper Smith violated Plaintiff's constitutional rights, and if so, whether those rights were clearly established. Trooper Smith argues that he did not violate Plaintiff's constitutional rights, as he had reasonable suspicion to detain Plaintiff after issuing the warning and had probable cause to arrest Plaintiff. Trooper Smith argues that even if he did violate Plaintiff's constitutional rights, those rights were not clearly established.

Trooper Smith also argues that because he had probable cause to arrest Plaintiff for

speeding and failing to dim his lights and because he ultimately arrested Plaintiff, the extended detainment and ultimate arrest were not in violation of Plaintiff's constitutional rights. Under Trooper Smith's theory, if an individual commits any offense, even a minor one, in the officer's presence for which the officer could arrest that individual and the officer ultimately arrests that individual for another offense, the arrest is not in violation of the individual's rights, and there is no need to look to whether the officer had reasonable suspicion to extend the stop or probable cause for the ultimate arrest. If Trooper Smith is correct, the inquiry stops there. Therefore, the court will begin with this argument.

**Probable Cause to Arrest for Traffic Offenses**
**as Constitutional Blanket for the Extended Detention and Arrest**

Trooper Smith first cites <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318 (2001) for the proposition that an officer may arrest an offender even for minor offenses, such as not wearing a seatbelt. It does not follow from this alone, of course, that simply because an officer could arrest an individual for a minor traffic offense, he may constitutionally extend the stop without reasonable suspicion of criminal activity and then arrest that individual for a different offense where there is no probable cause.

Trooper Smith next cites <u>Virginia v. Moore</u>, 553 U.S. 164 (2008) for the proposition that an arrest is constitutional even though under state law, the officer should have issued a summons instead of arresting the offender. The court held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." <u>Id</u>. at 176. Again, it does not follow that because an officer may arrest a person for a crime committed in his presence without a warrant that he no longer needs

7

reasonable suspicion to extend a stop or probable cause for an arrest.

Trooper Smith also cites <u>Devenpeck v. Alford</u>, 543 U.S. 146 (2004), in which the Supreme Court held that an arrest is lawful under the Fourth Amendment even when the criminal offense for which there is probable cause to arrest is not "closely related" to the offense stated by the arresting officer at the time of arrest. Again, this case did not involve a question of whether the officer had reasonable suspicion to detain the individual. The facts of that case are not analogous to the facts here. Moreover, the case does not stand for the proposition argued by Trooper Smith.[4]

Trooper Smith also cites other cases pertaining to, *inter alia*, warrantless arrests and probable cause. None of these cases and none of Trooper Smith's arguments convince the court that probable cause to arrest for a minor traffic offense negates the constitutional need for reasonable suspicion to extend the stop or probable cause for an arrest on another offense.

**Reasonable Suspicion & Probable Cause**

The court now examines whether Trooper Smith had reasonable suspicion to detain Plaintiff after having issued the traffic warning and whether Trooper Smith had probable cause to arrest Plaintiff. The court must grant Trooper Smith qualified immunity unless Plaintiff has established that Trooper Smith violated his constitutional rights and those rights were clearly established.

 **Extension of the Traffic Stop – Reasonable Suspicion**

 "[O]nce an officer returns the driver's license and vehicle registration and issues a

---

[4]The case does bolster the argument discussed in a footnote briefly below, however, that even if Trooper Smith had no probable cause to arrest Plaintiff for felon in possession of a firearm, he had probable cause to arrest Plaintiff for obstruction.

warning ticket, he must allow the driver to proceed without further detention or questioning unless the officer has objectively reasonable and articulable suspicion that the driver is engaged in illegal activity." United States v. White, 584 F.3d 935, 949 (10th Cir. 2009) (quoting United States v. Lyons, 510 F.3d 1225, 1227 (10th Cir. 2007)). If, however, the officer acquires "a particularized and <u>objective</u> basis for suspecting the particular person stopped of criminal activity," the officer may extend a stop beyond its original purpose. Id. (emphasis added).

The court considers "the totality of the circumstances" in determining whether an officer acquired reasonable suspicion. Id. at 950. "[T]he level of suspicion required for reasonable suspicion is considerably less than proof by a preponderance of the evidence or that required for probable cause." Id. (citation omitted). Of course, while the level of suspicion required is low, an "unparticularized hunch" is not sufficient. Id.

In this case, Trooper Smith noted the following grounds for his suspicion of criminal activity: (1) he attempted to initiate the traffic stop on the Muskogee Turnpike's Chandler Road exit ramp, and Plaintiff continued through the light and onto a gas station rather than stopping immediately; (2) he noticed signs of extreme nervousness in Plaintiff, including, *inter alia*, sweaty, shaky hands, nervous laughter, continuous yawning, and heavy breathing, even after he advised Plaintiff that he would only be receiving a warning; and (3) Plaintiff's travel plans seemed unusual.

The court certainly sympathizes with Plaintiff's reasons for continuing to a well-lighted area before stopping. The court can also, however, understand why Plaintiff's failure to stop immediately would give an officer reason for at least some suspicion. While nervousness alone cannot support reasonable suspicion, the court may consider it in the totality of the

9

circumstances. Id. As the court articulated at the pretrial conference, it does not find Plaintiff's travel plans particularly unusual. Nevertheless, the court recognizes that Trooper Smith did find them unusual and that unusual travel plans alone can form a basis for reasonable suspicion. Id. at 951.

Of course, Trooper Smith's subjective reasoning is not important. The question is whether he had objectively reasonable and articulable suspicion to extend the stop. The bar is a low one. The level of suspicion Trooper Smith needed to have reasonable suspicion was "considerably less than proof by a preponderance of the evidence" Id. at 950 (emphasis added). Considering the totality of the particular circumstances at issue here, Trooper Smith had objectively reasonable suspicion of criminal activity; thus, the continued detention of Plaintiff after the warning was given to him did not violate his Fourth Amendment rights. Plaintiff has not established that his constitutional rights were violated by the extension of the stop.

Furthermore, even if Plaintiff's constitutional rights were violated by the extension of the stop, those rights were not clearly established. Of course, it is clearly established that an officer may not constitutionally extend a stop after issuing a traffic warning without objectively reasonable and articulable suspicion. Nevertheless, the inquiry into whether the officer has reasonable suspicion is highly fact-specific and the bar is low – the officer need only "considerably less than preponderance of the evidence." The court does not believe that it would be clear to a reasonable officer that extending the stop was unlawful in this situation.

**The Arrest – Probable Cause**

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."

Devenpeck, 543 U.S. at 152. "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. The officer's "state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Id. at 153. Whether probable cause exists is determined by an objective standard. Id. "Efficient and evenhanded application of the law demands that [the court] look to whether the arrest is objectively justified rather than to the motive of the arresting officer." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011).

Trooper Smith arrested Plaintiff for being a felon in possession of a firearm in violation of 21 OKLA. STAT. § 1283(A). Under § 1283, a juvenile felony offense that is over ten years old does not qualify as an underlying felony. Trooper Smith had been advised by the Oklahoma Highway Patrol dispatcher that Plaintiff had a felony from the state of Michigan. Trooper Smith was aware that the felony in question occurred when Plaintiff was a minor teenager and that it was over ten years old.[5] Nevertheless, juvenile offenses are generally sealed and not listed on a national database. Trooper Smith could have reasonably concluded that because the felony was listed on the national database, Plaintiff was charged as an adult and that the offense, therefore, was not a "juvenile offense" within the meaning of the statute. Accordingly, the court finds that given the facts known to him at the time, Trooper Smith had probable cause to effect the arrest.[6]

---

[5] The record does not make clear whether the dispatcher advised him or whether Trooper Smith simply did the math, but somehow Trooper Smith was aware of these facts. The court notes that Trooper Smith took extra measures to make certain the record did, in fact, belong to Plaintiff.

[6] Furthermore, as Trooper Smith argues, he also had probable cause to arrest Plaintiff for obstruction in violation of 21 OKLA. STAT. § 540. Plaintiff told Trooper Smith that he had never been arrested for breaking and entering and that he did not have a felony on his record. The record sent to Trooper Smith by the dispatcher stated otherwise. Trooper Smith could have arrested Plaintiff for obstruction; thus, even if no probable cause existed for the arrest for felon in

11

Plaintiff has not established that Trooper Smith violated his constitutional rights.

Additionally, the court finds that even if Trooper Smith violated Plaintiff's constitutional rights, he did not violate clearly established law. To violate clearly established law, the "existing precedent must have placed the statutory or constitutional question beyond debate." Id. Courts are "not to define clearly established law at a high level of generality," but are to look at the specific circumstances of the case. Id. at 2084. In this case, Trooper Smith made a mistaken judgment about whether Plaintiff's record included an offense that qualified as a felony under 21 OKLA. STAT. § 1283(A). It is not clearly established that when faced with a record showing a felony, but no indubitable proof the felony is a qualifying underlying felony, that an arrest for felon in possession of a firearm is a constitutional violation.

In fact, "[q]ualified immunity gives government officials <u>breathing room to make reasonable but mistaken judgments about open legal questions</u>. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 2085 (emphasis added). Qualified immunity protection will apply regardless of whether the officer's mistake is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231.

The court finds that Trooper Smith is entitled to qualified immunity. Trooper Smith's amended motion for summary judgment, therefore, is granted.

---

possession of a firearm, the arrest was still constitutional. "Subjective intent of the arresting officer, *however* it is determined (and of course subjective intent is *always* determined by objective means), is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." Devenpeck, 543 U.S. 154-55.

**THE STATE'S MOTION**

The State argues that it is immune from liability pursuant to 51 OKLA. STAT. § 155(4). Section 155(4) provides in pertinent part: "The state or political subdivision shall not be liable if a loss or claim results from . . . enforcement of . . . a law, whether valid or invalid, including but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy."  This section exempts the State from liability for arrests made with probable cause. Overall v. State ex rel. Dept. of Public Safety, 910 P.2d 1087, 1092 (Okla. App. 1995). Moreover, even if the charge for which an individual is arrested is later dropped, that fact does not retroactively make the arrest unlawful.  Id.

The court has already held that Trooper Smith had probable cause to arrest Plaintiff. Accordingly, the State is immune from liability. The State's motion for summary judgment, therefore, is granted.

**CONCLUSION**

Accordingly, Trooper Smith's amended motion for summary judgment [Docket No. 34] is hereby GRANTED. His first motion for summary judgment [Docket No. 30] is MOOT. The State's motion for summary judgment [Docket No. 31] is hereby GRANTED.

IT IS SO ORDERED this 23rd day of March, 2012.

**Dated this 23rd day of March, 2012.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma